UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REGINALD BURGESS, :
    Plaintiff, :
: 3:09-cv-888 (CFD)
    v. :
:
HARTFORD LIFE INS. CO., :
    Defendant. :

## RULING ON MOTIONS TO DISMISS

### I. Introduction

The plaintiff Reginald Burgess ("Burgess") has brought a variety of claims against the Hartford Insurance Co. ("Hartford") arising from an interpleader action Hartford initiated in state court in California against Burgess and several other parties concerning the disbursement of an annuity the Hartford had issued. The claims and issues in this action are identical to those that Burgess brought in a cross-claim against Hartford in the California litigation, and those claims were dismissed by the California Superior Court. Hartford has moved to dismiss on several grounds. This case is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) under the doctrine of collateral estoppel, since the issues and claims of this case have been previously litigated in a valid judicial forum.

### II. Background[1]

This case is another chapter in the lengthy book of litigation brought by Burgess

---

[1]Unless otherwise noted, these facts are taken from the parties' memoranda, exhibits, and affidavits concerning the pending motion to dismiss.

concerning his involvement with the assets of June and George Williams. Prior to 2001, Burgess and his now ex-wife Karen Sparks ("Sparks") were live-in caregivers for June and George Williams in Los Angeles, California. See Memorandum in Support of Defendant's Motion to Dismiss, Dkt. 34-1, p. 3.[2] June Williams was the aunt of Sparks. Id. The Williams made Burgess and Sparks "trustees of trusts" that would allow Burgess and Sparks to take title to the Williams' home, located in California, and obtain certain other rights and assets upon the death of the Williams. Id. In October 2001, Sparks conveyed the Williams home as a "gift" to Burgess via quitclaim deed. Id. at 4. After June Williams passed away, John Williams ("Williams") removed his brother George from the residence and initiated proceedings in the California State probate court. Id., see also United States ex rel. Burgess v. State of California, No. 04-03053, 2004 U.S. Dist. LEXIS 29742, at *3-4 (C.D. Cal. July 23, 2004). The probate court found that Burgess and Sparks had obtained their trustee status through undue influence, and transferred the living trust to Williams as conservator. The court also entered judgment against Burgess and Sparks for damages of $400,000, which was later memorialized in an order dated August 8, 2002. Id.

After the issuance of the order, Williams pursued a writ of possession for George Williams' home that Sparks had "gifted" to Burgess. On September 30, 2002, Burgess filed for Chapter 7 bankruptcy, automatically staying Williams' attempt to obtain the writ of possession. The bankruptcy court granted relief from stay so that state court proceedings could determine the title to and possession of the house in question. Id., see also In re Burgess, No. 04-09129, 2005 U.S. Dist. LEXIS 42099 at *3 (C.D. Cal. January 14, 2005). On January 13, 2003, the

---

[2]Such references in this opinion are to the docket in the instant matter.

bankruptcy court granted Burgess a discharge. See Defendant's Motion to Dismiss, Dkt. 34, Ex. B.

Meanwhile, Burgess had appealed the orders and findings of the California Probate Court that awarded Williams $400,000 in damages. In its subsequent order, the California Court of Appeals held that any claim to the $400,000 damage award was moot, because Burgess' debt had been discharged by the bankruptcy court. In Re Williams at 3; see also Defendant's Motion to Dismiss, Dkt. 34, Ex. C. However, the court clarified that although any issue concerning Burgess' debt to Williams was moot, the question of title to George Williams' house, now in Burgess' possession, was not moot. Id. In response to the Court of Appeals ruling, the California Probate Court vacated the $400,000 money judgment. See Memorandum in Support of Defendant's Motion to Dismiss, Dkt. 34-1, p. 5.

On August 5, 2004, the Los Angeles County Superior Court entered an order directing the clerk of the court to issue a writ of possession for George Williams' house in favor of Williams. In re Burgess, No. LA 02-37195-ER, 2004 Bankr. LEXIS 2445 (Bankr. C.D. Cal. April 27, 2004). Burgess filed a Chapter 11 bankruptcy petition, which automatically stayed the Superior Court order until October 14, 2004. The bankruptcy court found that Burgess' Chapter 11 filing was in bad faith and was intended to forestall the effects of the August 5, 2004 order. Id. at 4-6. This ruling was affirmed by the U.S. District Court for the Central District of California. United States ex rel. Burgess, 2004 U.S. Dist. LEXIS 29742. During this period Burgess had also sued Williams, Williams' counsel, and the U.S. Bankruptcy Judge, and the California State court system claiming that the August 2002 order was rendered without jurisdiction and in violation of bankruptcy law. Id.

Burgess also pursued a claim to the annuity involved in this case in a path of litigation similar to the litigation concerning Williams' house. On September 24, 1999, June Williams invested $15,037.60 in an annuity contract ("the Annuity") with the Hartford Life Insurance Company ("Hartford"). June designated Kimberly Cordova ("Cordova") as the sole beneficiary. The contract had a provision calling for the payment of the account value to the named beneficiary at the death of the contract owner. See Memorandum in Support of Defendant's Motion to Dismiss, Dkt. 34-1, p. 6. On September 24, 2001, before June Williams died, Burgess and Sparks submitted an "Annuity Change Request" to Hartford seeking to change the beneficiary from Cordova to the trust of Burgess and Sparks. See Defendant's Motion to Dismiss, Dkt. 34, Ex. C. On October 30, 2002, Burgess submitted another Annuity Change Request seeking to change the beneficiary from Cordova to Burgess. See Defendant's Motion to Dismiss, Dkt. 34, Ex. D. On December 23, 2002, Hartford received a letter and affidavit from Sparks claiming that she was the trustee of the "Trust" and that she believed the October 30, 2002 Annuity Change Request form to be a forgery. See Defendant's Motion to Dismiss, Dkt. 34, Ex. E. At the time of Sparks' claim, the Trust had been invalidated by an order of the California Superior Court. Burgess denied Sparks' claims in two letters to Hartford.

On November 10, 2004, Williams asserted a claim to the Annuity funds on behalf of George Williams. He reasserted the claim in a letter to Hartford dated June 25, 2006. See Defendant's Motion to Dismiss, Dkt. 34, Ex. C.

In light of the competing claims to the Annuity, Hartford filed a complaint for interpleader in the California Superior Court on January 15, 2008. The complaint alleged that more than one party had claimed an interest in the Annuity funds, that the Hartford claimed no

interest, and that interpleader was necessary to avoid multiple liability against Hartford. See Defendant's Motion to Dismiss, Dkt. 34, Ex. F. The complaint was instituted against Burgess, Williams, Sparks, and Cordova. Sparks responded by disclaiming any interest in the Annuity and was dismissed as a party by Hartford, while Cordova was never located and the Superior Court entered a default judgment against her. See Defendant's Motion to Dismiss, Dkt. 34, Ex. D.

Burgess filed a cross-complaint, which was subsequently amended twice and submitted in final form as "Third Amended Cross Complaint" ("TACC"). In the TACC, Burgess alleged that Hartford breached the Annuity contract by failing to immediately pay the Annuity funds to him, tortiously instituted the litigation in California in violation of his Chapter 7 bankruptcy discharge and, in concert with Williams, tortiously continued to prosecute it despite the fact that Williams' claim to the Annuity was void. These allegations were put forth in eight counts arising under California law: breach of fiduciary duty, intentional infliction of emotional distress, interference with contract relations, professional negligence, breach of contract, fraud, abuse of process, and malicious prosecution. Hartford filed a demurrer, and the California Superior Court dismissed all of Burgess' claims for failure to state a claim[3] in a written opinion on December 5, 2008. See Defendant's Motion to Dismiss, Dkt. 34, Ex. H. On June 18, 2009 the California Superior Court granted Hartford's motion to be discharged, but retained Burgess and Williams as parties so they could litigate the issue of ownership of the Annuity proceeds. See Defendant's Motion to Dismiss, Dkt. 34, Ex. I. On October 7, 2009, the California Superior Court entered a written

---

[3]Burgess' claim for interference with contract relations was dismissed because it was a new claim added to the TACC and could not be raised.

order granting summary judgment in favor of Williams against Burgess' claims. See Defendant's Motion to Dismiss Amended Complaint, Dkt. 76, Ex. P. This decision was affirmed by the California Court of Appeals. Hartford Life Ins. v. Williams, No. B219508, 2010 WL 1381003 (Cal.App. 2 Dist., April 8, 2010).

On June 5, 2009, Burgess filed a Complaint against Hartford with this court concerning the Annuity. In the Complaint Burgess alleged abuse of process, malicious prosecution, breach of fiduciary duty, intentional infliction of emotional distress, interference with contractual obligations, professional negligence, breach of contract, fraud, and specific performance, and then filed an amended complaint [Dkt. 53]. Hartford moved to dismiss both complaints on the grounds of abstention, that a required party had not been joined, improper service of process, for failure to state a claim, and collateral estoppel through Motions to Dismiss the Complaint and Amended Complaint [Dkt. 34 and 76].

## III. Applicable Law and Discussion

This action is subject to dismissal under Fed. R. Civ. P. 12(b)(6) under the doctrine of collateral estoppel. See Concopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2nd Cir. 2000) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."). Generally, "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment is barred, even if the issue recurs in the context of a different claim." Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008), quoting New Hampshire v. Maine, 532 U.S. 742, 748-49

(2001) (internal quotation marks omitted). "Federal courts are compelled by the 'full faith and credit' statute to give the same collateral estoppel and res judicata effects to state court judgments as would the courts of that state." Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010) quoting Se. Res. Recovery Facility Auth. v. Montenay Int'l. Corp., 973 F.2d 711, 712 (9th Cir.1992). Therefore, the effects of claim and issue preclusion on this action must be viewed under California state law.

Under California law, "res judicata precludes parties or their privies from relitigating a cause of action [finally resolved in a prior proceeding]. But res judicata also includes a broader principle, commonly termed collateral estoppel, under which an issue necessarily decided in [prior] litigation [may be] conclusively determined as [against] the parties [thereto] or their privies ... in a subsequent lawsuit on a different cause of action." Vandenberg v. Superior Court, 21 Cal.4th 815, 828 (1999) quoting Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd., 58 Cal.2d 601, 604 (1962) (internal quotation marks omitted). "Res judicata is not a jurisdictional defense, and may be waived by failure to raise it in the trial court." David v. Hermann,129 Cal.App.4th 672, 684 (App. Ct. 2005) quoting 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 281, p. 821. (Internal quotations omitted). However, collateral estoppel as a defense need not be alleged in an answer or other responsive pleading, particularly where the prior adjudication of the issue did not then exist. Rodgers v. Sargent Controls & Aerospace, 136 Cal.App.4th 82, 90 (App. Ct. 2006). "To determine whether to preclude relitigation on collateral estoppel grounds, judicial notice may be taken of a prior judgment and other court records." Id.

Five standards must be met to apply collateral estoppel: (1) the issue sought to be precluded must be identical to an issue litigated in a former proceeding; (2) the issue must have

been actually litigated in the former proceeding; (3) the issue must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.  See Lucido v. Superior Court, 51 Cal.3d 335, 341 (1990). The party seeking preclusion bears the burden of establishing that the above requirements are met.  Id.

Beyond the five threshold requirements, the court must also consider the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular case." Johnson v. GlaxoSmithKline, Inc., 166 Cal.App.4th 1497 (App. Ct. 2008) citing Lucido v. Superior Court, 51 Cal.3d 335, 342-343 (1990).  The court must consider the rights of the party to be estopped in relation to the need to apply res judicata or collateral estoppel "in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation."  Clemmer v. Hartford Insurance Co., 22 Cal.3d 865, 875 (1978).

*A.     The Threshold Requirements for Collateral Estoppel are Satisfied*

First, the issues and claims in this action are identical to those in the California litigation. In its argument for abstention in their initial motion to dismiss, Hartford details the congruency between Burgess' complaint in this action, and the cross-complaint from the California Litigation. See Memorandum in Support of Defendant's Motion to Dismiss, Dkt. 34-1, p. 10. Hartford has provided charts comparing, paragraph by paragraph, Burgess' claims in his complaint with his claims from his cross-complaint (TACC) in the California litigation. See

Defendant's Motion to Dismiss, Dkt. 34, Ex. L and Motion to Dismiss Amended Complaint, Dkt.76, Addendum to Exhibit L.  The chart accurately displays that the substance of Burgess' claims in this matter are identical to the claims made in the California litigation, save for occasional changes in the phrasing or order of the claims.  Burgess' claims of abuse of process, malicious prosecution, breach of fiduciary duty, intentional infliction of emotional distress, interference with contractual obligations, professional negligence, breach of contract, fraud, and specific performance have been transferred nearly verbatim from the TACC to his complaint in this action.  The claims in this action are again targeted at Hartford as they were in the California litigation.[4]  Therefore, all of the issues in this matter have been raised in the previous proceeding.  The first requirement is satisfied.

Next, the issues and claims were actually litigated, they were necessarily decided, and the decision is final and on the merits.  After the Hartford brought its interpleader action in California, Burgess filed his cross-complaint.  He then received two opportunities to amend his complaint, before the TACC was dismissed without leave to amend due to a failure to state a cognizable claim.  See Defendant's Motion to Dismiss, Dkt. 34, Ex. H.  In its written order to sustain the Hartford's demurrer, the California Superior Court addressed each of Burgess' claims, and how each of them fail to allege a necessary element of the related cause of action.  For instance, "Mr. Burgess fails to allege the existence of a valid contract with Hartford such that Mr. Burgess may directly bring a breach of contract action on the annuity contract." Id. at 11.

---

[4] The amended complaint here added additional allegations to certain counts of the original complaint, but they do not materially change the claims. Two new counts were added, denominated 10th and 11th causes of action. The 10th alleges defamation, and the 11th loss of consortium.

These are not mere technical shortcomings, but rather reflect a lack of any substantive basis for the causes of action Burgess claims. These facts, along with the opportunities presented to Burgess to amend his cross-complaint, evidence that the issues were actually litigated and disposed of on the merits. The second, third, and fourth requirements are satisfied.

Finally, Burgess is the same party from the California litigation. This satisfies the final threshold requirement for collateral estoppel.

       B.       *Policy Concerns Weigh in Favor of Collateral Estoppel*

This case satisfies the policy concerns underlying the doctrine of collateral estoppel. The broadest aim of collateral estoppel is that "its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." Lucido v. Superior Court, 51 Cal.3d 335, 343 (1990). First, as discussed above, Burgess has had an ample opportunity to litigate his claims. Second, collateral estoppel in this matter promotes judicial economy by minimizing repetitive litigation. This matter has already been fully litigated in a Californian state court. Any further litigation would expend judicial resources on a matter that has already been resolved. Furthermore, any further litigation would threaten the judicial system with inconsistent judgments. It would be contrary to the goals of the judicial system to allow a federal court sitting in Connecticut to undermine a valid decision of a California court on an issue concerning California law. The issue has been properly adjudicated, and in accord with "full faith and credit" afforded to the states, the rest of the judicial system should respect it. See 28 U.S.C.A. § 1738, and U.S.C.A. Const. Art. IV § 1.

Finally, the application of collateral estoppel in this matter would protect Hartford from vexatious and harassing litigation. As evidenced from court records and described in the

Hartford's motion to dismiss, Burgess has a long history of vexatious and duplicative litigation. Federal and state courts have noted that Burgess' tactics as "suspicious," and indicate that he uses different forums to interfere with proceedings in another forum, along with hopes that some forum will give him a favorable ruling. See Memorandum in Support of Defendant's Motion to Dismiss, Dkt. 34-1, p. 13. The Supreme Court has identified "preclusion of issues as an element of the prohibition on double jeopardy." Lucido, 51 Cal.3d 335, 343. Having to perpetually litigate the same issue, a situation Hartford has found itself in, is precisely the justification for the doctrine of collateral estoppel. The policy concerns associated with collateral estoppel support its application.[5]

## IV. Conclusion

For the reasons set forth above, the defendant's motions to dismiss [Dkt. #34 and #76] are GRANTED in favor of the defendant. The Clerk is directed to close the case.

SO ORDERED this __30th__ day of August 2010, at Hartford, Connecticut.

/s/ Christopher F. Droney

**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[5]Burgess added two new counts in his amended complaint here: Count 10 (defamation) and 11 (loss of consortium). These claims are dismissed under Fed. R. Civ. P. 12(b)(6) for the following reasons: (1) As to Count 10, the allegedly defamatory statements were absolutely privileged because made during the course of the California litigation; (2) As to Count 11, the loss of consortium claim is barred by the statue of limitations, Hartford did not owe Sparks a duty of care, and Sparks has not asserted a claim herself.